**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:21-CV-00154-CHL**

**GARY P.,[1]**                                                                                          **Plaintiff,**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**                                          **Defendant.**

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Complaint filed by Plaintiff, Gary P. ("Claimant").  Claimant seeks

judicial review of the final decision of the Commissioner of Social Security ("the Commissioner").

(DN 1.)  Claimant and the Commissioner each filed a Fact and Law Summary.  (DNs 22, 24.)  The

Parties have consented to the jurisdiction of a Magistrate Judge to enter judgment in this case with

direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed.  (DN 16.)

Therefore, this matter is ripe for review.

For the reasons set forth below, the final decision of the Commissioner is **AFFIRMED**.

**I.      BACKGROUND**

On or about November 16, 2018, Claimant protectively filed an application for disability

insurance benefits ("DIB") alleging disability beginning on February 13, 2013.  (R. at 15, 107,

110, 128, 145, 221-22.)  Claimant subsequently amended his alleged onset date to September 30,

2017.  (*Id.* at 15, 37, 185.)  On July 27, 2020, Administrative Law Judge ("ALJ") Steven Collins

("the ALJ") conducted a hearing on Claimant's application.  (*Id.* at 31-76.)  In a decision dated

September 2, 2020, the ALJ engaged in the five-step sequential evaluation process promulgated

---

[1] Pursuant to General Order 22-05, the Plaintiff in this case is identified and referenced solely by first name and last
initial.

by the Commissioner to determine whether an individual is disabled.  (*Id.* at 12-30.)  In doing so,

the ALJ made the following findings:

1.      The claimant last met the insured status requirements of the Social Security Act on December 31, 2018.  (*Id.* at 17.)

2.      The claimant did not engage in substantial gainful activity during the period from his amended alleged onset date of September 30, 2017, through his date last insured of December 31, 2018.  (*Id.* at 18.)

3.      Through the date last insured, the claimant had the following severe impairments: irritable bowel syndrome (IBS), depressive disorder, anxiety disorder, attention deficit hyperactivity disorder (ADHD), post-traumatic stress disorder (PTSD) and cannabis abuse disorder.  (*Id.*)

4.      Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  (*Id.*)

5.      [T]hrough the date last insured, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except he is able to frequently climb, stoop, kneel, crouch, crawl; he must avoid concentrated exposure to vibration and even moderate exposure to hazards, to include work around unprotected heights, work around dangerous moving machinery and/or driving commercially; he is able to understand, remember and carry out simple and routine tasks and some detailed but not complex tasks in a work environment without a fast pace or strict production quotas; he is able to perform work in two hour segments over an eight-hour day; he is limited to occasional social interaction with supervisors, co-workers and the general public.  (*Id.* at 20.)

6.      Through the date last insured, the claimant was unable to perform any past relevant work.  (*Id.* at 25.)

7.      The claimant . . . was 55 years old, which is defined as individual of advanced age, on the date last insured.  (*Id.*)

8.      The claimant has at least a high school education.  (*Id.* at 48.)

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.  (*Id.*)

10.     Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed. (*Id.*)

11.     The claimant was not under a disability, as defined in the Social Security Act, from September 30, 2017, the alleged onset date, through December 31, 2018, the date last insured. (*Id.* at 26.)

Claimant subsequently requested an appeal to the Appeals Council, which denied his request for review on January 4, 2021. (*Id.* at 1-6, 217-20.) At that point, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 422.210(a) (2021); *see also* 42 U.S.C. § 405(h) (discussing finality of the Commissioner's decision). Pursuant to 20 C.F.R. § 422.210(c), Claimant is presumed to have received that decision five days later. 20 C.F.R. § 422.210(c). Accordingly, Claimant timely filed this action on March 10, 2021. (DN 1.).

## II.     DISCUSSION

The Social Security Act authorizes payments of DIB to persons with disabilities. *See* 42 U.S.C. §§ 404-434. An individual shall be considered "disabled" if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a) (2021).

### A.     Standard of Review

The Court may review the final decision of the Commissioner but that review is limited to whether the Commissioner's findings are supported by "substantial evidence" and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). "Substantial evidence" means "more than a mere scintilla"; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The Court must "affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would also have supported the opposite conclusion."  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013); *see Smith v. Sec'y of Health & Hum. Servs.*, 893 F.2d 106, 108 (6th Cir. 1989) (holding that if the Court determines the ALJ's decision is supported by substantial evidence, the court "may not even inquire whether the record could support a decision the other way").  However, "failure to follow agency rules and regulations" constitutes lack of substantial evidence, even where the Commissioner's findings can otherwise be justified by evidence in the record.  *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

**B.      Five-Step Sequential Evaluation Process for Evaluating Disability**

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating whether an individual is disabled.  20 C.F.R. § 404.1520 (2021).  In summary, the evaluation process proceeds as follows:

(1)      Is the claimant involved in substantial gainful activity?  If the answer is "yes," the claimant is not disabled.  If the answer is "no," proceed to the next step.

(2)      Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement[2] and significantly limits his or her physical or mental ability to do basic work activities?  If the answer is "no," the claimant is not disabled.  If the answer is "yes," proceed to the next step.

(3)      Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1?  If the answer is "yes," the claimant is disabled.  If the answer is "no," proceed to the next step.

(4)      Does the claimant have the residual functional capacity ("RFC") to return to his or her past relevant work?  If the answer is "yes," then the claimant is not disabled.  If the answer is "no," proceed to the next step.

---

[2] To be considered, an impairment must be expected to result in death or have lasted/be expected to last for a continuous period of at least twelve months.  20 C.F.R. § 404.1509 (2021).

(5)      Does the claimant's RFC, age, education, and work experience allow him
         or her to make an adjustment to other work?  If the answer is "yes," the
         claimant is not disabled.  If the answer is "no," the claimant is disabled.

20 C.F.R. § 404.1520(a)(4).

The claimant bears the burden of proof with respect to steps one through four.  *Walters v.*

*Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  However, the burden shifts to the

Commissioner at step five to prove that other work is available that the claimant is capable of

performing.  *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).  The claimant

always retains the burden of proving lack of RFC.  *Id.*; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388,

392 (6th Cir. 1999).

### C.      Claimant's Contentions

Claimant argued that the ALJ erred in his analysis of Claimant's mental impairments in

formulating his assessment of Claimant's RFC.  (DNs 22, 22-1.)  In particular, Claimant argued

that the ALJ's decision was "the product of legal error because the ALJ failed to properly evaluate"

some of the medical opinion evidence in the record.  (*Id.* at PageID # 1741, 1749-66.)  He also

argued that the ALJ's RFC finding and analysis of the opinion evidence in the record were not

based on substantial evidence and were instead based on mischaracterizations of the record.  (*Id.*)

An ALJ's RFC finding is the ALJ's ultimate determination of what a claimant can still do

despite his or her physical and mental limitations.  20 C.F.R. §§ 404.1545(a)(1), 404.1546(c)

(2021).  The ALJ bases his or her determination on all relevant evidence in the case record.  20

C.F.R. § 404.1545(a)(1)-(4).  Thus, in making his or her determination of a claimant's RFC, an

ALJ must necessarily evaluate the persuasiveness of the medical opinions in the record and assess

the claimant's subjective allegations.  20 C.F.R. §§ 404.1520c, 404.1529 (2021).

Here, the ALJ found that Claimant could "understand, remember and carry out simple and routine tasks and some detailed but not complex tasks in a work environment without a fast pace or strict production quotas" and "perform work in two hour segments over an eight-hour day." (R. at 20.)  He also limited the Claimant to "occasional social interaction with supervisors, co-workers and the general public." (*Id.*)  In support, the ALJ summarized the Claimant's mental health treatment between September 2017 and November 2018. (*Id.* at 21-22.)  He noted that Claimant's records revealed a history of anxiety, depression, PTSD, and marijuana use. (*Id.* at 21.)  The ALJ observed that though Claimant was prescribed medication to assist with his mental impairments, Claimant declined medication and reported he had stopped taking it on several occasions. (*Id.*)  The ALJ summarized that Claimant presented at his mental health visits between September 2017 and November 2018 with a number of symptoms including at various times irritable mood, labile affect, tangential thought process, restlessness, pressured speech, emotional instability, depressed mood, anxious mood, agitated mood, short attention span, impaired memory, euthymic mood, and dramatic and delusional behavior. (*Id.* at 21-22.)  However, the ALJ observed, at the same visits where he exhibited the above symptoms, Claimant frequently showed appropriate and alert behavior; was oriented to person, place, and time; was cooperative; and was engaged with his providers. (*Id.*)  The ALJ highlighted that by Claimant's November 2018 visit, Claimant reported noticing some improvement when he took his new medication every day. (*Id.* at 22.)  Claimant also demonstrated intact memory and fair insight and judgment during that visit. (*Id.*)  The ALJ emphasized that the November 2018 visit was the last visit of record prior to Claimant's date last insured. (*Id.*)  The ALJ also summarized Claimant's own reports regarding his mental impairments including that Claimant stated being overwhelmed by anxiety, not liking going out in public, using his friends to distract himself from "negative thoughts," having flashbacks to traumatic events

6

from his childhood, being easily distracted, and having problems with short-term memory.  (*Id.* at 21.)  Ultimately, the ALJ "acknowledge[d] that the [C]laimant does experience some limitations but not to the extent alleged."  (*Id.* at 25.)  In support, he credited the opinions of state agency psychiatric consultant Michelle Bornstein, Psy. D., and Dan Vandivier, Ph.D., who both opined that Claimant could perform work consistent with the restrictions imposed by the ALJ.  (*Id.* at 24.)  The ALJ found those opinions persuasive because they were consistent with treatment notes demonstrating that despite mood deficits, Claimant was cooperative, interacted well with his providers, lived alone, had friends who assisted with his mood, had generally intact memory, and could engage in a number of daily activities.  (*Id.*)  The ALJ found not persuasive the opinions of Daphne Luster, LPCC, and Daniel Miller, Ph.D., for various reasons that the undersigned will discuss more fully below.  (*Id.* at 22-23.)

Claimant argued that the ALJ erred in his treatment of the opinions of counselor Luster and Dr. Miller.  (DN 22-1.)  The new regulations for evaluating medical opinions are applicable to Claimant's case because he filed his application after March 27, 2017.  Pursuant to 20 C.F.R. § 404.1520c, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)" in the record regardless of its source.[3]   20 C.F.R. § 404.1520c(a).  Instead,  an ALJ will evaluate the "persuasiveness" of a medical opinion by reference to the five factors listed in the regulation: supportability, consistency, relationship with the claimant, specialization, and other factors.  20 C.F.R. § 404.1520c(a), (c).  The regulations provide that the two most important factors are supportability and consistency and that an ALJ is required to "explain how [he or she] considered the supportability and consistency factors for a medical source's medical opinions."  20 C.F.R. § 404.1520c(a), (b)(2).  An ALJ is not required to

---

[3] This language indicates that the new regulation has done away with the controlling weight and other old rules regarding the weight to be ascribed to medical opinions.  20 C.F.R. § 404.1527(c)(2) (2021).

explicitly discuss how he or she weighed the other regulatory factors of relationship with the claimant, specialization, and other factors.  20 C.F.R. § 404.1520c(b)(1)-(2).

The Sixth Circuit has not elucidated a specific standard to determine whether an ALJ sufficiently complied with the requirement to "articulate how [he or she] considered the medical opinions" and "explain how [he or she] considered the supportability and consistency factors" under the new regulations.  20 C.F.R. § 404.1520c(b).  *But see Deaner v. Comm'r of Soc. Sec.*, 840 F. App'x 813, 822 (6th Cir. 2020) (White, J. dissenting) (applying the new regulations and finding that "[t]he ALJ did not clearly analyze the supportability and consistency of the state consultants' assessments, as compared to other evidence in the record which supported [the plaintiff]'s claims").  However, district courts applying the new regulations within this circuit consistently apply the articulation requirement literally.  *See, e.g.*, *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 909 (E.D. Mich. 2021) ("The administrative adjudicator has the obligation in the first instance to show his or her work, i.e., to explain in detail *how the factors actually were applied* in each case, to each medical source. Resorting to boilerplate language to support a finding of unpersuasiveness does not satisfy that obligation." (emphasis in original)); *White v. Comm'r of Soc. Sec.*, No. 1:20-CV-00588-JDG, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021) ("Although the new standards are less stringent in their requirements for the treatment of medical opinions, they still require that the ALJ provide a coherent explanation of [her] reasoning."); *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 5:20-CV-1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021) (finding that "the [new] regulations do require that the ALJ clearly explain his consideration of the opinions and identify the evidence supporting his conclusions").

To the extent that by arguing that the ALJ's analysis of counselor Luster and Dr. Miller's opinions constituted "legal error," Claimant intended to argue that the ALJ did not comport with the above procedural requirements, the Court finds otherwise.  The ALJ's discussion does not rely on boilerplate language and contains a sufficient articulation of the supportability and consistency factors to comport with the regulatory requirements.  As to counselor Luster, the ALJ summarized her opinion regarding Claimant's abilities and then found that the same was not persuasive because it "fail[ed] to address specific work related limitations," there were "no treatment notes in the record from [counselor] Luster," and her opinion was inconsistent with other evidence in the record.  (R. at 22-23.)  Likewise with Dr. Miller, the ALJ summarized the findings from his examination of the Claimant then noted that "although Dr. Miller's examination results support some limitations," Dr. Miller's opinion also "fail[ed] to address specific work related limitations" and was inconsistent with Claimant's reported daily activities and treatment notes/examinations. (*Id.* at 23.)  While Claimant may disagree with the ALJ's conclusion, the ALJ's discussion comports with the procedural requirements of 20 C.F.R. § 404.1520c and is sufficiently detailed to allow the Court to assess the merits of the ALJ's analysis.  Thus, the Court finds no procedural error requiring remand in the ALJ's analysis of the opinion evidence.

Claimant argued that both counselor Luster and Dr. Miller's opinions did address specific work related limitations and, in fact, they "provided for functional limitations based upon the agency's own criteria."  (DN 22-1, at PageID # 1752, 1752-53.)  Counselor Luster completed a checkbox form on which she documented a number of Claimant's symptoms and opined that he had a marked restriction in his activities of daily living and an extreme limitation on/difficulty with his ability to maintain social functioning.  (R. at 622.)  Counselor Luster marked as "present" "[d]eficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks

9

in a timely manner (in work settings or elsewhere)," "[r]epeated [e]pisodes of deterioration or decompensation," and "[c]omplete inability to function independently outside the area of the patient's home due to panic attacks." (*Id.* at 622-23.) In a section of the form related to "work limitations," counselor Luster marked checkboxes as "not significantly impaired," "moderately impaired," "markedly impaired," or "extremely impaired" on a number of limitations. (*Id.* at 623-24.) While some of those limitations mirror the language of the ALJ's RFC analysis, the options on counselor Luster's form did not detail Claimant's ability to perform tasks related to those limitations during the work day in functional terms. For example, counselor Luster marked as "moderately impaired" Claimant's ability to "maintain attention and concentration for extended periods" but did not state what that meant in terms of the length of time Claimant could concentrate during the work day. (*Id.* at 623.) The ALJ found Claimant could "perform work in two hour segments over an eight-hour day." (*Id.* at 20.) Dr. Miller likewise noted in his evaluation that Claimant had either no limitations or a mild, moderate, marked, or extreme limitation in a number of categories in his evaluation. (*Id.* at 699-700.) But he too did not specify Claimant's limitations in terms of Claimant's functional abilities. While, as Claimant points out, terms like "moderate," "marked," and "extreme" do have defined meanings in social security assessments, those terms most often are utilized during examination of whether a claimant satisfies the relevant Paragraph B criteria for Listings in Section 12.00. (*See id.* at 19-20.) As the ALJ correctly observed in his opinion, those criteria "are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process," whereas "[t]he mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning." (*Id.*

at 20.)  Thus, the ALJ's reliance on the difference between the terms used by counselor Luster and Dr. Miller and the RFC analysis was a relevant factor for his consideration.

Claimant also challenged the ALJ's conclusions that counselor Luster and Dr. Miller's opinions were not consistent with the overall record.  (DN 22-1, at PageID #1754-60.)  In doing so, he accused the ALJ of basing his "horrifically lacking" analysis "upon a rather remarkable mischaracterization of the record," "picking and choosing" only the evidence that supported the ALJ's decision, and downplaying the evidence demonstrating Claimant was disabled.  (*Id.* at 1754, 1757, 1760-61.)  As a starting point, "[a]lthough required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004) (quoting *Craig v. Apfel,* 212 F.3d 433, 436 (8th Cir. 2000)); *see also Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004) ("An ALJ need not discuss every piece of evidence in the record for his decision to stand.").  However, the Court examines the record as a whole, including whatever evidence "in the record fairly detracts from its weight," without "resolv[ing] conflicts in evidence or decid[ing] questions of credibility" to determine whether an ALJ's decision is supported by substantial evidence.  *Conner v. Comm'r of Soc. Sec.*, 658 F. App'x 248, 253 (6th Cir. 2016) (quoting in part *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990), and citing *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012)).  Thus, where an ALJ has "improperly cherry picked evidence" instead of "more neutrally [ ] weighing the evidence," his or her decision is unlikely to be supported by substantial evidence.  *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009); *see Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 641 (6th Cir. 2013) ("[S]ubstantiality of evidence evaluation does not permit a selective reading of the record.").

Claimant pointed to a number of the records cited by the ALJ in support of his conclusion

that "[e]xaminations showed some deficits in [Claimant]'s attention span/concentration but his

memory was generally intact," (R. at 22-23), and argued that the ALJ left out other information

from those visits that would present "a clear[er] picture of the extent of [Claimant]'s level of

impairment." (DN 22-1, at PageID # 1755.)  Claimant's argument ignores that while the ALJ did

not present a fulsome analysis of the records cited in his discussions of counselor Luster and Dr.

Miller's opinions, earlier in his RFC analysis the ALJ did summarize the Claimant's mental health

treatment between September 2017 and November 2018.  (R. at 21-22 (citing *id.* at 299, 311-12,

498, 547-51, 582-600, 972-78, 1003-1007, 1292, 1295).)  In doing so, the ALJ acknowledged

some of the symptoms Claimant was exhibiting during those visits, including ones emphasized by

Claimant in his brief.  The ALJ's RFC analysis as a whole demonstrates that the ALJ simply did

not view the symptoms relied upon by the Claimant as supporting the level of limitations Claimant

argued were appropriate.  And at least some of the opinion evidence in the record concurred with

the ALJ's interpretation of the record.  As noted above, the ALJ found the opinions of the state

agency psychological consultants persuasive.  This distinction is important because while an ALJ

is not required to base his RFC on a medical opinion, *Brown v. Comm'r of Soc. Sec.*, 602 F. App'x

328, 331 (6th Cir. 2015), the mere existence of symptoms or a diagnosis do not establish functional

limitations.  *See Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 713 (6th Cir. 2013) (citing *Higgs

v. Bowen,* 880 F.2d 860, 863 (6th Cir. 1988)) ("But not every diagnosable impairment is

necessarily disabling."); *Kennedy v. Astrue*, 247 F. App'x 761, 767 (6th Cir. 2007) ("[A] mere

diagnosis of obesity does not establish either the condition's severity or its effect on [claimant]'s

functional limitations.").  While Claimant argued it was error for the ALJ to credit the state agency

psychological consultants' opinions over the opinions of counselor Luster and Dr. Miller, the ALJ

12

committed no error in doing so here in view of his other analysis.  Unlike as is often the case, the state agency psychological consultants' opinions are dated after Claimant's date last insured, and they had many of the records dated before then on which to form their conclusions.  (R. at 109-44.)  Claimant also failed to supply citation to an instance where a treating provider imposed functional limitations that the ALJ failed to discuss or evaluate.  Thus, the Court finds no error in the ALJ's decision to credit the opinions of the state agency psychological consultants over that of counselor Luster and Dr. Miller.

Claimant also summarized a number of other records post-dating November 2018 in his brief that he claimed supported greater limitations than those provided for by the ALJ.  (DN 22-1, at PageID # 1746-49.)  The ALJ found—and Claimant did not challenge—that Claimant's date last insured was December 31, 2018.  (R. at 17.)  A claimant must establish that he or she was disabled prior to the expiration of his or her insured status to be entitled to DIB.  42 U.S.C. § 423(a)(1) ("Every individual who . . . is insured for disability benefits . . . and is under a disability . . . shall be entitled to a disability insurance benefit."); *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990) (citing 42 U.S.C. § 423(a), (c)).  Thus, courts have held that "[e]vidence of disability obtained after the expiration of insured status is generally of little probative value." *Strong v. Social Sec. Admin.*, 88 F. App'x 841, 845 (6th Cir. 2004) (citing *Cornette v. Sec'y of Health & Hum. Servs.,* 869 F.2d 260, 264 n.6 (6th Cir. 1988)).  Post-insured status evidence may be relevant and probative if "it illuminates the claimant's health before the insurance cutoff date." *Grisier v. Comm'r of Soc. Sec.*, 721 F. App'x 473, 477 (6th Cir. 2018) (citing *Casey v. Sec'y of Health & Hum. Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Cornette*, 869 F.2d at 264 n.6; *Higgs*, 880 F.2d at 863).  *See also Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849-50 (6th Cir. 2020); *Wirth v. Comm'r of Soc. Sec.*, 87 F. App'x 478, 480 (6th Cir. 2003) (citing *King v. Sec'y of Health*

*and Hum. Servs.,* 896 F.2d 204, 205-06 (6th Cir. 1990)).  Claimant failed to demonstrate that the records post-dating December 2018 related back to his health before his date last insured so as to make them relevant to either the ALJ's or this Court's analysis.  This reliance on those records is, therefore, nondispositive of whether the ALJ's decision was supported by substantial evidence.

Ultimately, having reviewed the records relied upon by the ALJ and the Claimant's characterization of the same, the Court finds that this is a case where the ALJ properly resolved conflicts in the evidence and supported his decision, including his analysis of counselor Luster and Dr. Miller's opinions, with substantial evidence.  "The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts."  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)).  This Court could not overturn the ALJ's analysis without itself reweighing the evidence in a manner that is improper.  While, as Claimant emphasizes, there is some evidence in the record that could support the opposite conclusion reached by the ALJ, that is not a proper area of inquiry for this Court.  *Gayheart*, 710 F.3d at 374; *Smith*, 893 F.2d at 108; *Ulman,* 693 F.3d at 714.  The ALJ's analysis more than surpasses the threshold for substantial evidence, which is "not high."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) ("Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations.  And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high.").

Thus, the Court finds that the ALJ's RFC analysis, including his assessment of the opinion evidence, was supported by substantial evidence.

15

## III.   ORDER

For the foregoing reasons, the final decision of the Commissioner is **AFFIRMED**.  A final

judgment will be entered separately.

Colin H Lindsay, Magistrate Judge

United States District Court

cc:      Counsel of Record

September 26, 2022